[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-11329

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 21, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-80094-CR-DTKH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NATHAN DESHAWN FAUST,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 21, 2006)**

Before BLACK, BARKETT and COX, Circuit Judges.

BLACK, Circuit Judge:

Nathan Deshawn Faust appeals his conviction and 210-month sentence for possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). He argues: (1) there is insufficient evidence to support his conviction; (2) the district court erred in admitting evidence under Federal Rule of Evidence 404(b) because the Government failed to provide adequate notice of its intent to introduce such evidence; and (3) the district court violated his Sixth Amendment right to a jury trial by enhancing his sentence based on conduct for which he was acquitted. For the reasons set forth more fully below, we affirm.

I. BACKGROUND

On June 12, 2003, police responded to a 911 call at a residence in West Palm Beach, Florida. Joy Wright opened the door but insisted she had not called 911. She did not allow the officers inside. Shortly thereafter, Faust appeared at the door, and Wright identified him as her husband who lived there. After leaving, the officers informed the narcotics unit of suspicious behavior at the residence.

Narcotics officers returned to the residence later that night. Soon after arriving, they witnessed Faust leaving the residence in a black rental car and observed a red Camaro parked outside. They then searched the trash at the curb outside the residence. This "trash pull" uncovered 17 aluminum baking pans, seven or eight of which contained scoring marks and white powder residue, and a

2

small plastic bag also containing white powder residue. A trash pull conducted a few days later uncovered additional plastic bags with the same residue. The residue on the items tested positive for cocaine based on an initial field test.

Police obtained a search warrant and searched the residence on June 25, 2003. Wright was not at home, but four others, including Faust, were present. The officers found a bag containing 31.6 grams of cocaine on top of a kitchen cabinet next to an unopened letter addressed to Faust, and a baking pan bearing scoring marks similar to those on the pans found in the first trash pull. Throughout the house, they also found 94 grams of methylenedioxymethamphetamine (ecstasy), four firearms and ammunition, $2700 in cash, and what was believed to be incense, a known cutting agent. A digital scale that Faust later admitted was his, men's clothing and cologne, and family photographs including Faust were also found in the house. Following Faust's arrest, $745 in small bills was found in his pants pocket.

Faust was charged in a four-count superceding indictment.[1] At trial, the Government presented testimony from the landlord of the residence, who said both

---

[1] Specifically, Faust was charged with: (1) possession with the intent to distribute ecstasy, in violation of 21 U.S.C. § 841(a)(1); (2) possession with the intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1); (3) possession of a firearm and/or ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e); and (4) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 942(c)(1)(A)(i) and (ii).

Wright and Faust originally signed the lease, but only Wright signed the renewal agreement. He also testified that Faust owned a red Camaro. The Government then called a fingerprint expert who testified that one of the baking pans found in the first trash pull contained Faust's fingerprint. Another expert testified that the items found in the residence, as well as the scoring marks on the baking pans, were consistent with the cooking, cutting, and dealing of crack cocaine. The same expert testified that the $2700 found in the residence was banded in "dealer folds" and that drug dealers predominately keep property in the name of other individuals to isolate themselves from their drug dealing activities. Finally, the Government offered testimony from Dwayne Cooley under Federal Rule of Evidence 404(b).[2] Cooley said he had a history of purchasing crack cocaine from Faust and had seen Faust cooking crack cocaine. In defense, Faust argued he did not live at the residence and had no knowledge of the drugs or guns found there. The jury convicted Faust of possession with intent to distribute cocaine, but acquitted him on the remaining three counts.

---

[2] Federal Rule of Evidence 404(b) states, in pertinent part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of . . . intent . . . ." The Government contends it introduced Cooley's testimony regarding his past drug dealings with Faust to prove Faust intended to distribute the cocaine found in the residence.

The pre-sentence investigation report (PSI) calculated Faust's base offense level at 20 pursuant to U.S.S.G. § 2D1.1(a)(3) and (c)(10) due to his responsibility for 31.6 grams of cocaine and 94 grams of ecstasy. Two levels were added under § 2D1.1(b)(1) because he possessed a dangerous weapon. However, because Faust was a career offender under § 4B1.1(a) and the statutory maximum for his convicted offense was 30 years,[3] his offense level was set at 34 pursuant to § 4B1.1(b). With a criminal history category of VI, his Guideline range became 262 to 327 months' imprisonment.

Faust was sentenced after the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005). At sentencing, he renewed his objections to the PSI, arguing his sentence should not be enhanced based on possession of ecstasy and weapons because he was acquitted of that conduct. The district court overruled the objection because it had considered the Guidelines as advisory and had based its calculations on a preponderance of the evidence. The district court, however, granted Faust's motion for a downward departure because his criminal history category seriously over-represented his criminal history. With a new criminal history category of IV, Faust's Guideline range became 210 to 262

---

[3] This statutory maximum was based on a violation of 21 U.S.C. § 841(b)(1)(C), and the Government having filed a notice of enhancement pursuant to 21 U.S.C. § 851.

months' imprisonment. The court considered the factors in 18 U.S.C. § 3553(a), and sentenced Faust to 210 months' imprisonment and 6 years' supervised release. This appeal followed.

## II. DISCUSSION

A. *Sufficiency of the Evidence*

Faust first argues there is insufficient evidence on which to sustain his conviction because the Government cannot show he possessed the cocaine found at the residence. We review sufficiency of the evidence claims de novo. *United States v. McDowell*, 250 F.3d 1354, 1361 (11th Cir. 2001). To determine if evidence is sufficient to support a conviction, we must view the evidence in the light most favorable to the Government and decide whether a reasonable juror could have reached a conclusion of guilt beyond a reasonable doubt. *United States v. Calderon*, 127 F.3d 1314, 1324 (11th Cir. 1997). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Harris*, 20 F.3d 445, 453 (11th Cir. 1994).

To support a conviction under 21 U.S.C. § 841(a)(1), the Government must establish the defendant "(1) knowingly (2) possessed cocaine (3) with intent to distribute it." *Id.* Possession may be either actual or constructive. *Id.* "The

6

government may prove constructive possession if it shows a defendant maintained dominion or control over the drugs or over the premises where the drugs are located." *Id.* Constructive possession can be established by either direct or circumstantial evidence and by inferences arising from the surrounding circumstances. *See United States v. Pruitt*, 763 F.2d 1256, 1264 (11th Cir. 1985).

The Government presented sufficient evidence at trial to support the conclusion that Faust constructively possessed the cocaine found at the residence. In the first trash pull, police uncovered 17 baking pans, many containing cocaine residue and scoring marks consistent with the cutting of crack cocaine. Faust was seen leaving the residence on the night of the trash pull, and his fingerprint was found on one of the baking pans that contained cocaine residue. Moreover, when executing the search warrant, police discovered an unopened letter addressed to Faust next to the bag of cocaine and an additional baking pan bearing scoring marks. Throughout the house, the officers also found $2700 in cash, a digital scale, and incense, a known cutting agent. In addition, $745 in small bills was found on Faust's person. This evidence, bolstered by Dwayne Cooley's testimony regarding his past drug dealings with Faust, could, and did, convince a reasonable juror beyond a reasonable doubt that Faust participated in the production of crack cocaine and possessed the cocaine found at the residence for that purpose.

Furthermore, although Faust denied living at the residence, the Government presented sufficient evidence for the jury to infer that he did in fact live there or, at the very least, "maintained dominion or control . . . over the premises." *See id.* When police responded to the 911 call and Faust appeared at the door, Wright identified him as her husband who lived there. During the search, police discovered letters addressed to Faust, men's clothing and cologne, family photographs that included Faust, and a digital scale, which Faust admitted was his. Faust also signed the original lease and, although he did not sign the renewal agreement, an expert testified that such behavior was consistent with the actions of drug dealers. Finally, Faust testified that he could gain access to the residence at will; indeed, Wright was not at home on the night of the search, and Faust had let himself in. Based on this evidence, a reasonable juror could have concluded beyond a reasonable doubt that Faust maintained dominion or control over the residence. Accordingly, sufficient evidence supports Faust's conviction on a constructive possession theory.

B.    *Rule 404(b) Evidence*

Faust next argues the district court erred in admitting Dwayne Cooley's testimony. He does not dispute the content of Cooley's testimony, but instead contends the Government failed to provide reasonable notice of its intent to

introduce his testimony as required by Federal Rule of Evidence 404(b). The record directly contradicts this assertion.

Under Rule 404(b), evidence of prior acts is not admissible to prove the defendant's character, but is admissible for other limited purposes "provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial." On July 30, 2002, in its first response to the standing discovery order, the Government disclosed its intent to offer 404(b) evidence at trial. On January 6, 2004, more than seven months prior to trial, the Government submitted a supplemental response indicating "pursuant to [Federal Rule of Evidence] 404(b) it may offer the testimony of Dwayne Cooley regarding his narcotic dealings with defendant." The supplemental response went on to detail the content of Cooley's anticipated testimony. The Government's notice, given more than seven months before trial, was certainly sufficient to satisfy Rule 404(b)'s reasonable notice requirement.

C. *Sixth Amendment Challenge*

Finally, Faust argues the district court erred in enhancing his base offense level due to its finding that he possessed ecstasy and firearms, because the jury

acquitted him of that conduct.[4]  Faust contends that even when the Sentencing

Guidelines are applied in an advisory manner, the Sixth Amendment right to a jury

trial prohibits courts from considering relevant conduct for which a defendant was

acquitted when making sentencing calculations.  This Court has already rejected

that argument.

Under our long-standing precedent, "[r]elevant conduct of which a

defendant was acquitted nonetheless may be taken into account in sentencing for

the offense of conviction, as long as the government proves the acquitted conduct

relied upon by a preponderance of the evidence."  *United States v. Barakat*, 130

F.3d 1448, 1452 (11th Cir. 1997); *see also United States v. Rivera-Lopez*, 928

F.2d 372, 372-73 (11th Cir. 1991).  As the Supreme Court explained in *United*

*States v. Watts*, 519 U.S. 148, 154, 117 S. Ct. 633, 636 (1997), "sentencing

enhancements do not punish a defendant for crimes of which he was not

convicted, but rather increase his sentence because of the manner in which he

committed the crime of conviction."  "[C]onsideration of information about the

defendant's character and conduct at sentencing does not result in 'punishment'

---

[4] Faust also argues the district court erred in determining the term "statutory maximum" in U.S.S.G. § 4B1.1(b)(B) refers to the number of years set forth in the substantive statute rather than the maximum sentence permitted by the Guidelines prior to the application of any enhancements.  This argument is without merit.  It is beyond question that "statutory maximum" refers to the maximum sentence a defendant can receive, according to the substantive statute, based on his offense of conviction.

10

for any offense other than the one of which the defendant was convicted." *Id.* at

155, 117 S. Ct. at 636 (quotation omitted). Faust recognizes this precedent, but

argues the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125

S. Ct. 738 (2005), casts doubt on it.

In *United States v. Duncan*, 400 F.3d 1297, 1304-05 (11th Cir. 2005), *cert.*

*denied*, __ U.S. __ , 126 S. Ct. 432 (2005), however, we held nothing in *Booker*

prohibits courts from considering relevant acquitted conduct when the Sentencing

Guidelines are applied as advisory.[5] As we explained:

> *Booker* does not suggest that the consideration of acquitted conduct
> violates the Sixth Amendment as long as the judge does not impose a
> sentence that exceeds what is authorized by the jury verdict. Thus,
> nothing in *Booker* erodes our binding precedent. *Booker* suggests
> that sentencing judges can continue to consider relevant acquitted
> conduct when applying the Guidelines in an advisory manner, 'for
> when a trial judge exercises his discretion to select a specific sentence
> within a defined range, the defendant has no right to a jury
> determination of the facts that the judge deems relevant.'

*Id.* (quoting *Booker*, 543 U.S. at 233, 125 S. Ct. at 750); *see also United States v.*

*Rodriguez*, 398 F.3d 1291, 1301 (11th Cir. 2005) (explaining "all nine [justices]

agreed that the use of extra-verdict enhancements in an advisory guidelines system

---

[5] Every other circuit to consider this issue has reached the same conclusion. *See United States v. High Elk*, 442 F.3d 622, 626 (8th Cir. 2006); *United States v. Vaughn*, 430 F.3d 518, 526-27 (2d Cir. 2005); *United States v. Price*, 418 F.3d 771, 787-88 (7th Cir. 2005); *United States v. Magallanez*, 408 F.3d 672, 684-85 (10th Cir. 2005).

is not unconstitutional.").  Indeed, in Justice Stevens' majority opinion in *Booker*, he stated "[n]one of our prior cases is inconsistent with today's decision" and specifically discussed *Watts*, among other cases.  *Booker*, 543 U.S. at 240-41, 125 S. Ct. at 754-55.  Thus, *Watts*' holding—"that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence conduct," *Watts*, 519 U.S. at 156, 117 S. Ct. at 638 —survives *Booker*.

We also note 18 U.S.C. § 3661, on which *Watts* relied, remains intact post-*Booker*.  Under § 3661, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  Because the Supreme Court in *Booker* excised only two provisions of the Sentencing Act, 18 U.S.C. § 3553(b)(1) and § 3742(e), *see Booker*, 543 U.S. at 259, 125 S. Ct. at 764, it follows that courts may still consider relevant facts concerning a defendant's "background, character, and conduct" when making sentencing calculations, even if those facts relate to acquitted conduct.  *See Magallanez*, 408 F.3d at 684-85.  Accordingly, under an advisory Guidelines scheme, courts can continue to consider relevant acquitted conduct so long as the facts underlying the conduct are proved by a preponderance

of the evidence and the sentence imposed does not exceed the maximum sentence authorized by the jury verdict.

Here, the district judge clearly applied the Guidelines as advisory, stating during the sentencing hearing, "I absolutely understand that the Sentencing Guidelines are no longer mandatory." The judge then found the facts underlying the acquitted conduct by a preponderance of the evidence. As for the ecstasy charge, the evidence showed that several bags of ecstasy, totaling 94 grams, were recovered from the living room on the night of the search. The judge found "the presence of [ecstasy] certainly has been established by a preponderance of the evidence, and its relationship to the Defendant as being involved in the possession of those drugs has been established by a preponderance of the evidence." As for the weapons charge, four firearms were recovered, one next to a bag of ecstasy and three elsewhere in the residence. The judge found by a preponderance of the evidence that either Faust or a co-conspirator possessed the firearms. Based on these findings, the judge enhanced Faust's offense level accordingly. Finally, Faust's ultimate sentence, 210 months' imprisonment, was well below the 30-year maximum sentence authorized by the jury verdict of conviction on the cocaine possession charge. The district court thus did not err in considering the ecstasy and weapons charges as relevant conduct when calculating Faust's sentence.

13

## III. CONCLUSION

We affirm Faust's conviction because it is supported by sufficient evidence and because the Government provided reasonable notice of its intent to introduce Cooley's testimony. We also affirm Faust's sentence because the district court did not err in considering relevant acquitted conduct, established by a preponderance of the evidence, when calculating his sentence.

**AFFIRMED**.

**BARKETT, J., specially concurring:**

I join the majority in affirming Faust's conviction, but concur in its sentencing decision only because I am bound by Circuit precedent.  Although United States v. Duncan, 400 F.3d 1297 (11th. Cir.), cert. denied, --- U.S. **---** (2005), expressly authorized the district court to enhance Faust's sentence for conduct of which a jury found him innocent, I strongly believe this precedent is incorrect, and that sentence enhancements based on acquitted conduct are unconstitutional under the Sixth Amendment, as well as the Due Process Clause of the Fifth Amendment.

The Sixth Amendment right to a jury trial is endangered whenever a judge imposes a sentence that is not based solely on "facts reflected in the jury verdict or admitted by the defendant."  Blakely v. Washington, 542 U.S. 296, 301 (2004).  In the present case, Faust exercised his Sixth Amendment right and a jury of his peers returned an acquittal as to three of four charges in the indictment: possession of ecstacy, possession of a firearm by a convicted felon, and possession of a firearm during a drug trafficking offense.  This verdict necessarily reflected the jury's specific determination that Faust was not guilty of these statutorily defined crimes beyond a reasonable doubt.  Nonetheless, the district court increased his prison

15

term because the judge, and the judge alone, determined that Faust was guilty of them by a mere preponderance of the evidence.

The majority contends that sentence enhancements based on acquitted conduct are directly sanctioned by United States v. Watts, 519 U.S. 148 (1997). But in United States v. Booker, 543 U.S. 220, 224 (2005), the Supreme Court distinguished Watts on the same, readily apparent ground that distinguishes Watts from the present case: "[i]n Watts, relying on Witte v. United States, 515 U.S. 389 (1995), we held that the Double Jeopardy Clause permitted a court to consider acquitted conduct in sentencing a defendant under the Guidelines.  In neither Witte nor Watts was there any contention that the sentencing enhancement had exceeded the sentence authorized by the jury in violation of the Sixth Amendment."  Booker, 543 U.S. at 240 (emphasis added).  Because Faust brings a claim under the Sixth Amendment, not under the Double Jeopardy Clause, "the issue we confront today" – relating to the scope of a defendant's jury-trial right – "simply was not presented" in Watts, which posed "a very narrow question regarding the interaction of the Guidelines with the Double Jeopardy Clause."  Id. at 240, 240 n.4.

Thus the holding of Watts, explicitly disavowed by the Supreme Court as a matter of Sixth Amendment law, has no bearing on this case in light of the Court's

16

more recent and relevant rulings in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), <u>Ring v. Arizona</u>, 536 U.S. 584 (2002), <u>Blakely</u>, and <u>Booker</u>.  The impact of these decisions on the present case is hardly obviated by the fact that <u>Booker</u> declined to graft onto the Sentencing Act a requirement that juries find all facts considered in sentencing beyond a reasonable doubt, and declined to excise provisions of the Act providing for judicial fact-finding as part of sentencing.  Though true so far as it goes, this observation, standing alone, hardly dictates the propriety of Faust's sentence enhancement for acquitted conduct.

There is a vital constitutional difference between sentencing a defendant for 100 grams of cocaine where he was convicted of possessing 50 grams, and punishing a defendant for 90 grams of ecstacy where the jury refused to convict him of possessing even a milligram of that substance.  As the Ninth Circuit warned fifteen years ago, it "pervert[s] our system of justice [to] allow[] a defendant to suffer punishment for a criminal charge for which he or she was acquitted." <u>United States v. Brady</u>, 928 F.2d 844, 851 (9th Cir. 1991).  The survival of this principle to the present day was explained particularly forcefully in <u>United States v. Pimental</u>, 367 F. Supp. 2d 143 (D. Mass 2005).  Although <u>Pimental</u> did not involve a drug conviction, the question in that case was no different from the one presented here and in <u>Duncan</u> – namely, whether a judge may constitutionally base

a sentence on "the very same conduct that [a] jury considered" and declined to impute to the defendant. Id. at 145. There the court reasoned that "it makes absolutely no sense to conclude that the Sixth Amendment is violated whenever facts essential to sentencing have been determined by a judge rather than a jury, . . . and *also* conclude that the fruits of the jury's efforts can be ignored with impunity by the judge in sentencing." Id. at 150 (citing Blakely, 542. U.S. 296). For it is not the abstract dignity of the statutory maximum that is at stake in the Supreme Court's Sixth Amendment jurisprudence, but the integrity of the jury right itself, the cornerstone of our criminal justice system. See Booker, 543 U.S. at 236 (decrying how, as sentences became less tethered to actual verdicts, "jur[ies] finding[s] of the underlying crime became less significant").

Insisting that its decisions in Jones, Apprendi, and Booker are not "motivated by Sixth Amendment formalism, but by the need to preserve Sixth Amendment substance," id. at 237, the Supreme Court has consistently returned to the bedrock principle that criminal sentences must be "authorized" by "the jury verdict alone." See Booker, 543 U.S. at 235; Blakely, 542 U.S. at 305; Ring, 536 U.S. at 604. There are at least two reasons why "Sixth Amendment substance" is violently eroded when our notion of a sentence "authorized by the jury verdict" is limited to punishments which merely stay within the statutory maximum for the

18

crime of conviction. First, the reasonable doubt standard is warranted when imputations of criminal conduct are at stake not only "because of the possibility that [an individual] may lose his liberty upon conviction," but also "because of the <u>certainty</u> that he would be stigmatized . . . ." <u>See</u> <u>In re. Winship</u>, 397 U.S. 358, 363 (1970) (emphasis added); <u>see also</u> <u>McMillan</u>, 477 U.S. at 96 ("Once a State defines a criminal offense, the Due Process Clause requires it to prove any component of the prohibited transaction that gives rise to both a special stigma and a special punishment beyond a reasonable doubt."). Even though Faust's maximum possible sentence was not increased by the sentencing judge's independent findings – three separate findings of actual, criminal conduct – they certainly do change the quantity and quality of the stigma he faces. Second, and even more importantly, "to consider acquitted conduct trivializes 'legal guilt' or 'legal innocence' – which is what a jury decides – in a way that is inconsistent with the tenor of the recent case law," <u>Pimental</u>, 367 F.Supp. 2d at 152, by "reducing the jury's role 'to the relative importance of a low-level gatekeeper.'" <u>Booker</u>, 543 U.S. at 230, citing <u>Jones v. United States</u>, 526 U.S. 227, 230 (1999). In sentencing on the basis of acquitted conduct, a court "<u>is expressly considering facts that the jury verdict not only failed to authorize; it considers facts of which</u>

19

the jury expressly disapproved." Pimental, 367 F. Supp. 2d at 152 (emphasis added).

The majority believes that, in a single proceeding, Faust's possession of ecstacy may be both an element of a crime and a sentencing fact provable by a mere preponderance of the evidence. This anomaly is hardly justified by the argument that "the jury 'only' decides guilt beyond a reasonable doubt while the judge decides facts by a fair preponderance of the evidence." Id. That argument might be more compelling if Booker had indeed returned us to the pre-Guidelines era, when "the trial sphere was rule-bound and sentencing was comparatively rule-less." Id. Before the Guidelines, "what the judge did in sentencing – a specialized, professional function – was totally different from what the jury did." Id. The Sixth Amendment implications were very different then, "because sentencing facts did not have binding and determinate consequences." Id. at 151. See also, United States v. Restrepo, 946 F.2d 654, 663 (9th Cir. 1991) (Norris, J., dissenting) (positing that the Sentencing Guidelines gave the defendant "a constitutionally-protected interest in a sentence less than the statutuory maximum. This liberty interest, created by the mandatory language of the Sentencing

Guidelines, is protected by the due process clause.").[1]  But far from returning us to

the pre-Guidelines days when judges "exercis[ed] something like a clinical

judgment about the appropriate sentence," Booker introduced a "hybrid" system in

which sentencing "is still profoundly influenced by the rules, namely the

Guidelines."  Pimental, 367 F.Supp. 2d at 151, 152.  Thus, like the Court in

Booker itself, we are "faced with the issue of preserving an ancient guarantee

under a new," rather than age-old and familiar, "set of circumstances."  Booker,

543 U.S. at 237.  The fair preponderance standard, which "made sense" under the

regime of indeterminate sentencing, simply "does not make sense in this hybrid

regime where rules still matter, and certain facts have important, if not dispositive,

consequences."  Pimental at 153.  See also Restrepo, 946 F.2d at 670 (Norris, J.,

dissenting) ("Central to any liberty interest analysis is the extent to which

governmental discretion to take away liberty has been cabined.").

     More fundamentally still, I believe Faust's sentence enhancements are

unconstitutional precisely because they derive from findings based on a

preponderance of the evidence.  Of course I am aware that McMillan v.

Pennsylvania, 477 U.S. 79 (1986), held that a preponderance standard at

---

[1] It is important to note that "mandatory-ness" is a question of degree, and that even the pre-Booker Sentencing Guidelines gave judges some discretion to depart from the mandated punishment range if they found certain aggravating or mitigating circumstances.

sentencing satisfies due process, even with regard to conduct that in itself

constitutes a criminal offense under applicable law.[2]  But "as a matter of simple

justice," Booker, 543 U.S. at 230, factual findings by a sentencing judge ought to

reflect the moral blameworthiness of an *already culpable* defendant.  Rather than

punishing an offender for his guilt or innocence *per se*, judicially imposed

enhancements historically relate to contextual matters like "the vulnerability of the

victim, the status of the victim, the defendant's role in the offense," or even the

quantity of drugs in the defendant's possession.  United States v. Grier, 449 F.3d

558, 583 (Sloviter, J., dissenting).  If these "contextual" questions can or should be

resolved by a sentencing judge under a preponderance standard, that is because

our criminal justice system deviates from its preference for the highest standard of

---

[2] I address my disagreement with McMillian primarily in order to distinguish the due process claim rejected by the Supreme Court in that case from the very different and particular due process problem, discussed *infra*, that arises when a defendant is sentenced on the basis of charges of which he has actually been acquitted.  I note, however, the view that McMillan's own logic is significantly undercut by the Court's more recent decisions in Apprendi, 530 U.S. 466 (2000) and Jones, 526 U.S. 227 (1999).  See United States v. Grier, 449 F.3d 558, 581 (Sloviter, J., dissenting) ("The holding of Jones that due process protections are required for offense-defining elements as distinguished from sentencing factors was the precedent on which the Supreme Court's decision in Apprendi was based. . . . Apprendi's sentence was vacated because the sentencing judge in that case found facts that constitute a separate crime by a preponderance of the evidence and that finding increased the statutory maximum to which the defendant was exposed.  [Because Grier's Guidelines range was increased on the basis of similarly offense-defining facts, his] situation is thus comparable to Apprendi's . . . I dissent from the holding that the District Court may enhance Grier's sentence based on its determination by a preponderance of the evidence, that Grier committed an aggravated assault that was not admitted nor submitted to a jury for determination by proof beyond a reasonable doubt.").

22

proof only when it comes to facts that do not – and could not – go to the basic question of legal culpability, traditionally a jury's responsibility. When a sentencing judge finds facts that could, in themselves, constitute entirely free-standing offenses under the applicable law – that is, when an enhancement factor could have been named in the indictment as a complete criminal charge – the Due Process Clause of the Fifth Amendment requires that those facts be proved beyond a reasonable doubt. See Winship, 397 U.S. at 364 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. . . . It is critical that . . . every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty."); see also Restrepo, 946 F.2d at 678 (Norris, J., dissenting) (asserting that the reasonable doubt standard is required for "an enhancement based on sentencing findings that appellant engaged in two additional sales of cocaine which were not charged in the indictment[, because t]hese additional sales constitute elements of a separate crime, not traditional sentencing factors").

The conduct that served as the basis for Faust's challenged sentence enhancements clearly did not relate to "traditional" sentencing factors. Apprendi,

23

530 U.S. at 493-94. They constituted wholly separate criminal charges, and their appearance as such in the indictment leads me to the last of my constitutional objections to today's opinion – namely, that sentencing on the basis of acquitted conduct not only violates the Due Process Clause's specific guarantee of proof beyond a reasonable doubt, but also other aspects of "the requirement of fundamental fairness" embodied in the constitutional right to due process of law. Winship, 397 U.S. at 369 (Harlan, J., concurring). In a case such as this, the specific demands of fundamental fairness are "contextual, taking into account . . . the practicalities of the criminal justice system." Richardson v. United States, 526 U.S. 813, 835 (1999).

The sentencing practice that Faust challenges does more than offer the government a second, if smaller, bite at the apple in criminal prosecutions. And it does more, even, than undermine the "particular significance" that law and society attach to an acquittal. See United States v. DiFrancesco, 449 U.S. 117, 129 (1980). When one looks to "the practicalities of the criminal justice system," it becomes apparent that the most pernicious effect of sentencing on the basis of acquitted conduct, and the one that most insidiously "violates those fundamental conceptions of justice which . . . define the community's sense of fair play and decency," Dowling v. United States, 493 U.S. 342, 353 (1990), is its implicit and

24

often hopeless demand that, in order to avoid punishment for charged conduct, criminal defendants must prove their innocence under two drastically different standards at once. See Winship, 397 U.S. at 367 (emphasizing the practical "difference between the reasonable-doubt and preponderance standards"). Calling on a defendant to convince a jury of his innocence beyond a reasonable doubt, even as he must constantly account for the court's ability to sentence him under a preponderance standard, exacerbates the very disparities which the reasonable doubt standard has been employed to correct. See, e.g., Santosky v. Kramer, 455 U.S. 745, 762-64 (1982) (disparity in litigation resources renders preponderance standard constitutionally inadequate in proceedings terminating parental rights).[3]

"There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account," especially in the formulation of trial strategy. Winship, 397 U.S. at 364 (citing Speiser v. Randall, 357 U.S. 513, 525 (1958)). Our Circuit's Duncan rule severely compromises defendants' ability to properly account for this margin of error, tailor an optimal

---

[3] "[T]he government's ability to make its case vastly exceeds a defendant's ability to rebut it. The financial resources of the prosecution and the ability of prosecutors to access police, informants, and experts usually are much greater than those of defendants' counsel. . . . [P]resentence reports often rely excessively on the prosecutor's files for their information . . . and hearsay evidence [there]in . . . or from confidential informants is difficult and costly to rebut. The absence of equal litigation resources thus makes the preponderance of evidence standard generate even more errors – errors that fall primarily on the side of deprivations of liberty for individuals." Restrepo, 946 F.2d at 675 (Norris, J., dissenting).

trial strategy, or indeed formulate any minimally satisfying strategy whatsoever. Faced with multiple allegations supported by evidence of varying persuasiveness, Faust's largely successful effort to escape guilt beyond a reasonable doubt could not preclude, and, in its successs, actually might have contributed to, his punishment for those acquitted offenses under a lesser standard of proof. I do not believe the Constitution permits this cruel and perverse result.